**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>IN RE GREEN DEVELOPMENT</td><td>*</td><td></td></tr>
<tr><td>CORPORATION S.A. DE C.V.,</td><td></td><td>Civil No. WDQ-15-2985</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Petitioner.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *   *

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned by the Honorable William D. Quarles to provide a report and recommendation, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, regarding Petitioner Green Development Corporation S.A. de C.V.'s Application for Judicial Assistance and Request for Authorization to Obtain Testimony and Documents Pursuant to 28 U.S.C. § 1782 ("Application").  (ECF No. 1.)  No hearing is deemed necessary.  See Loc. R. 105.6.  For the reasons discussed herein, I respectfully recommend that Petitioner's Application be DENIED.  I also order that this entire matter (15-MC-222) be placed under SEAL for sixty (60) days.

### I.    Procedural Background

Although Petitioner did not label its Application as ex parte, neither Respondent Michael McNicholas (the subject of Petitioner's discovery and subpoena request) nor the adverse parties in the related foreign litigation have been served with copies of this Application.  A party may

file—and a district court may grant—a Section 1782 application ex parte.  See, e.g., Chevron
Corp. v. Shefftz, 754 F. Supp. 2d 254 (2010).  The reviewing court may also order that a
petitioner's application be served on respondent(s).  See In re Anglin, 2009 WL 4739481 (2009)
(citing In re Letter of Request from Supreme Court of Hong Kong, 138 F.R.D. 27, 32 (1991)).

In light of the recommendations stated herein, it is not necessary that Respondent or any
of the parties in the related foreign litigation be served with—or be required to respond to—
Petitioner's Application.  It is appropriate, however, that Respondent McNicholas receive a copy
of this Report and Recommendation, as there is no indication that he has been made aware of the
instant proceedings or the allegations contained therein.  Under these circumstances, I further
conclude that this entire case should be placed under seal for sixty (60) days in order to allow
Respondent Michael McNicholas—if he so desires—to review and respond to this Report and
Recommendation, or to seek further sealing of this matter.

## II.    Factual Background

Petitioner Green Development Corporation S.A. de C.V. is a Sociedad Anónima de
Capital Variable (i.e., "variable capital corporation") ("Petitioner") organized under the laws of
Honduras. ((ECF No 1., ¶ 1.)  Its principal place of business is San Pedro Sula, Honduras.

Respondent Michael McNicholas ("Respondent") is an United States citizen and resident
of Carroll County, Maryland.  (Id., Ex. J.)  He is the resident agent of Pathfinder Consulting
USA, LLC, a Limited Liability Company organized under the laws of the state of Maryland.
(Id., Ex. K.)  Mr. McNicholas is also an author who has written on issues related to maritime
security and counter-narcotics.  (Id., ¶ 10.)

Petitioner is party to ongoing litigation in Honduran courts arising out of its financial and real estate dealings in Honduras. (Id., ¶¶ 16-17.) Judgments favorable to Petitioner have been rendered in Honduran trial and intermediate appellate courts, and the case is currently on appeal before the Honduran Supreme Court, that country's highest court. (Id., ¶¶ 6-7.)

Petitioner alleges that an unspecified, adverse party engaged in improper, ex parte communications with the Honduran Supreme Court, and that the content of these communications is prejudicial to Petitioner. (ECF No. 1, ¶ 7.) Specifically, Petitioner alleges that:

> "…one of the defendant banks surreptitiously sent to the Justices presiding over the case a copy of an article that Michael McNicholas authored and IOS Press BV published. That article contains outlandish defamatory claims accusing Green Development's CEO (Mohammad Yusuf Amdani) and two companies of laundering money in furtherance of international terrorism, smuggling drugs, and even aiding al-Qaeda."

(Id.)

In this Court, Petitioner seeks discovery, including the production of documents and a deposition of Mr. McNicholas, in order "to test the factual sufficiency of statements found in the Article" and "to discover information regarding McNicholas' improper motive…" (Id., ¶¶ 19-21.) Petitioner asserts that the fruits of its intended discovery expedition in the United States, to be submitted to the Honduran Supreme Court, would mitigate the adverse effect of its opponents' improper, ex parte communications to that Court. (Id.)


### III.   Discussion

### A.  Jurisdictional Requirements of 28 U.S.C. § 1782

There are four jurisdictional requirements before a party may obtain discovery pursuant to Section 1782. First, the target of the discovery request must "reside" or be "found" within the

district of the court in which the request is made.  (28 U.S.C. § 1782.)  Second, the discovery

sought must be "for use in a proceeding."  (Id.)  Third, the proceeding must be one before a

foreign or international tribunal.  (Id.)  Fourth, the discovery request must be made by the

tribunal itself "or upon the application of any interested person."  (Id.)

Here, Section 1782's jurisdictional requirements are satisfied.  First, the target of

Petitioner's discovery requests resides in Carroll County, Maryland, and is thus within the

territorial jurisdiction of this Court.  Second, while it is not entirely clear from Petitioner's

application how the fruits of its intended discovery would be used in the pending appellate

proceeding before the Honduran Supreme Court[1], the federal courts' broad interpretation of this

statutory requirement leads me to conclude that the requested discovery is "for use in a

proceeding."  See e.g., In re Application for an Order for Judicial Assistance in a Foreign

Proceeding in the Labor Court of Brazil, 466 F. Supp. 2d 1020, 1027 (N.D. Ill. 2006) (explaining

that evidence need not be admissible in the foreign court in order to be discoverable).  The third

statutory element, requiring that the tribunal be foreign, is undoubtedly satisfied here.  The final

jurisdictional requirement is also satisfied: a party to a foreign proceeding seeking discovery in

the United States is no doubt an "interested person" for purposes of § 1782.  Intel, 542 U.S. 241,

at 257.

## B.  Intel Discretionary Considerations

Even where the threshold, jurisdictional requirements are satisfied, the district court has

broad discretion in deciding whether to grant discovery requests under Section 1782.  Intel Corp.

v. Advanced Micro Devices, Inc., 542 U.S. 241, 244-45 (2004); see also In re Chevron Corp.,

---

[1] In light of the fact that Petitioner's application seeks information intended to rebut an allegedly wrongful, ex parte submission to that same court ("Obviously, [the Article] had never been proffered as evidence in accordance with dispositive law at any instance in the proceeding."  (ECF No. 1, ¶15.)), it is unclear how and by what procedure any favorable information obtained by Petitioner might be used in the foreign proceeding.  Petitioner has not explained how the Honduran court would receive such information if it were presented to that court.

753 F. Supp. 2d 536, 539 (D. Md. 2010).   The Supreme Court has identified four discretionary factors to be considered when reviewing § 1782 discovery requests: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance;" (3) whether the § 1782 request attempts to "circumvent foreign proof gathering restrictions or other policies;" and (4) whether the documents or testimony sought are "unduly intrusive or burdensome."  Intel, 542 U.S. at 264–65.  On all four factors, Petitioner's application fails to show that the requested discovery is appropriate in these circumstances.

> **1. Though Respondent is not a party to the Honduran litigation, it does not appear that the information sought is beyond the jurisdictional reach of the Honduran court.**

The Court in Intel explained that the need for discovery under § 1782 is "not as apparent" when the target of the discovery request is a party to the foreign litigation, as parties to foreign proceedings would presumably be within the foreign court's jurisdictional reach.  Intel, 542 U.S. at 264.  As Mr. McNicholas is not party to (nor alleged to have any direct interest in) the Honduran litigation and is a resident of Maryland, he would presumably be beyond the Honduran court's jurisdictional reach and not subject to discovery there.  These facts seemingly would point in favor of Petitioner.  The mere fact that Mr. McNicholas is not a party to the Honduran litigation, however, does not necessarily mean that he should be subject to Petitioner's discovery requests; such an open-ended rule would potentially subject all residents of the United States to § 1782 discovery.  Here, there is no evidence or even an allegation that Mr. McNicholas has any relationship with or knowledge of any information regarding an adverse party in the Honduran proceedings—or, indeed, that he had anything to do with the alleged sharing of his article with the justices of the Honduran Supreme Court.  To the contrary, Petitioner asserts that

Mr. McNicholas may possess information about Petitioner's own CEO, Mr. Amdani.   As information about Mr. Amdani's business and personal dealings[2] is most likely to be found with Mr. Amdani himself, there appears no reason to subject Mr. McNicholas to Petitioner's discovery requests.   The real utility of the non-party discovery mechanism of § 1782 is to allow a petitioner to access information possessed by non-parties beyond the legal reach of the foreign court.   Where, as here, Petitioner fails to show that the information sought is in fact beyond the foreign court's territorial jurisdiction, the need for discovery in the United States is not at all apparent.

## 2. It is unclear how the Honduran Supreme Court would receive the requested discovery.

Courts reviewing § 1782 applications next consider "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance" when determining whether to order discovery.   Intel, 542 U.S. at 264.   The Honduran Supreme Court has not requested this Court's assistance in obtaining any information for use in the proceedings before it.   There is no evidence that Petitioner has indicated to the Honduran court its purported need for the information sought.[3]   Nor is there any reason to believe that the Honduran court would be receptive to the introduction of new information during its appellate review of Petitioner's case pending before

---

[2] Here, Petitioner seeks to discover from Mr. McNicholas information regarding: any ties Mr. Amdani may have to al-Qaeda or other terrorist organizations; the maritime shipping practices of Mr. Amdani's corporations; and the scope of Green Development's own commercial activities.   (ECF No. 1, ¶¶ 13-14.)

[3] Although "Section 1782(a) does not incorporate an exhaustion requirement, and an applicant is not required to first seek discovery from the foreign tribunal," whether a petitioner has sought the intended discovery from the foreign tribunal does have some bearing on the foreign court's likely receptivity to American judicial assistance.   In re Veiga, 746 F. Supp. 2d 8, 24 (D.D.C. 2010).

it.[4]  Thus, while this Court might hope that Honduran courts would be receptive to American judicial assistance in general, Petitioner presents no reason to believe that the Honduran Supreme Court would be receptive to the information sought in this case.[5]

> ### 3. Though it is unclear whether Petitioner's request is an attempt to circumvent Honduran law, the intended discovery raises significant First Amendment concerns.

Section 1782 discovery should not be used to "conceal[] an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States."  Intel, 542 U.S. at 244-45.  The peculiar circumstances giving rise to Petitioner's motion—the allegedly wrongful, ex parte delivery of Mr. McNicholas' article to several justices of the Honduran Supreme Court—leave it unclear whether Petitioner's intended discovery constitutes an attempt to "circumvent foreign proof gathering restrictions or other policies."  Intel, 542 U.S. at 244-45. While there are presumably Honduran legal mechanisms for seeking sanctions or relief from such improper conduct, Petitioner has neither identified them nor indicated how its intended discovery might be used in the foreign proceeding.[6]  What Petitioner purportedly seeks is to "test

---

[4] Petitioner's application is largely silent on Honduran appellate procedure and the scope of the Honduran Supreme Court's jurisdiction.  While Petitioner explains that the court has "both original and appellate jurisdiction," and that the court "exercises the classic adjudicatory functions of a nation's highest court," these broad and conclusory assertions do not persuade this Court that the Honduran bench would be receptive to Petitioner's intended discovery at this point in the proceedings before it.  (ECF No. 1-1 at 15.)

[5] This Court is conscious of the possibility—one not alleged here—that corruption, political pressures, or institutional weaknesses might disfavor or result in the unjust treatment of a foreign litigant seeking discovery abroad.  See generally, Chevron Corp. v. Donziger, 974 F. Supp. 2d 362, 555-66 (granting relief from a foreign judgment procured by fraud, corruption, and coercion).  In the pending matter, however, there is not even an inference of any institutional weakness or wrongdoing on the part of the Honduran judiciary.  To the contrary, Petitioner zealously seeks to ensure that the verdict rendered in its favor, affirmed and increased to over $160 million on intermediate appeal, is upheld by the Honduran Supreme Court.  (See ECF No. 1, ¶ 17.)  Moreover, the extensive documentation submitted to this Court suggests that Petitioner, its parent company Grupo Karim, and its CEO Mr. Amdani are well connected in Honduras.  (See ECF No. 1, Ex.'s B, D, and E.)  In sum, there is no reason to believe that Petitioner has been denied any meaningful opportunity to gather evidence during the Honduran proceedings so as to warrant American judicial assistance.

[6] Petitioner summarily assures this Court that, "[t]he evidence shall be made part of the record on appeal in conformance with Honduran mandatory procedural norms."  (ECF No. 1, ¶ 17.)

the factual sufficiency of statements found in the Article," so that it may rebut before the Court the harmful allegations made therein.  (ECF No. 1, ¶ 19.)  Though this Court cannot conclude whether this tactic is a concealed attempt to circumvent Honduran procedural norms, this approach does at least give cause for some circumspection.

This Court is further concerned about the significant national security and First Amendment issues raised by Petitioner's request.  Specifically, Petitioner seeks to "expose the identity and content of [McNicholas'] sources."  (ECF No. 1, ¶ 20.)  Petitioner also seeks to obtain discovery "regarding the contents of the *Operation Cazando Anguilas* report[7] and information relating to the Report's author(s), editor(s), and contributor(s).  This would include, inter alia, a request for the name(s), (email) address(es), and telephone number(s) of the author(s), editor(s), and contributor(s) to the Report."  (Id.)  Finally, Petitioner "seeks to discover information regarding McNicholas' improper motive in either the creation of the Report, the conference presentation, or the publication of the article."  (Id. at ¶ 21.)

First, the fact that Petitioner seeks discovery regarding a Department of Defense report which Petitioner itself recognizes is "not publicly available" suggests that the information sought may be secret, classified, or otherwise protected as a matter of national security.  (ECF No. 1-1 at 10.)  As Petitioner has not explained the status of the report nor, critically, shown any need at all for such information, this Court will not entertain this part of Petitioner's request.

Second, insofar as Petitioner seeks to force the journalist Mr. McNicholas to reveal confidential sources used in the preparation of his article about Mr. Amdani, Petitioner raises substantial First Amendment and privilege concerns.  Well-established Fourth Circuit precedent

---

[7] Petitioner's application indicates that *Operation Cazando Anguilas* ("Operation Hunting Eels") is the title of a 2009 report commissioned by the United States Department of Defense.  (ECF No. 1-1 at 4.)

recognizes a journalist's privilege to keep sources confidential.  "News reporters are entitled to some constitutional protection of the confidentiality of their sources.  Such protection is necessary to ensure a free and vital press, without which an open and democratic society would be impossible to maintain."  Ashcraft v. Conoco, Inc., 218 F.3d 282, 287 (4th Cir. 2000) (internal quotations omitted).  See also Church of Scientology Int'l v. Daniels, 992 F.2d 1329, 1335 (4th Cir. 1993) (affirming district court's denial of petitioner's motion to compel newspaper editorial board's meeting minutes, notes, tapes, and draft articles); United States v. Sterling, 724 F.3d 482, 497 (4th Cir. 2013) cert. denied sub nom. Risen v. United States, 134 S. Ct. 2696 (2014) (recognizing the privilege, but noting its limits in criminal proceedings).  While this privilege is not absolute, courts in this circuit scrutinize discovery requests seeking to reveal a journalist's sources under a three part balancing test.[8]  Notwithstanding these weighty considerations and the extensive precedent on point, Petitioner is silent on the First Amendment implications of its request.  Therefore, this Court refuses to subject Mr. McNicholas to Petitioner's desired inquisition.

Finally, this Court rejects as irrelevant Petitioner's intended discovery about Mr. McNicholas' allegedly "improper motive" in his professional activities.  Discovery pursuant to § 1782 is limited by the same principle as discovery under the Federal Rules of Civil Procedure: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  See In re Veiga, 746 F. Supp. 2d 8, 19 (D.D.C. 2010).  Petitioner fails to explain—and this Court is unable to deduce—how Mr. McNicholas' 'motive' in publishing the allegedly false and defamatory article about Mr. Amdani four to five

---

[8] This test asks: "(1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information."  LaRouche v. Nat'l Broad. Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (citing Branzenburg v. Hayes, 408 U.S. 665, 710 (1972) (Powell, J., concurring)).

years prior to the allegedly wrongful submission to the Honduran Supreme Court would have any bearing on the appellate proceeding now pending before it.  (See ECF No. 1, Ex. I.)  That appeal, as Petitioner explains, arises out of a real estate development dispute between Petitioner and the Defendant Banks.  (ECF No. 1, ¶ 16-17.)  Even if Petitioner's theory of a nefarious nexus between Mr. McNicholas, the Defendant Banks, and the ex parte submission were credited, this Court is not persuaded that Mr. McNicholas' motive in writing or publishing the article has any relevance to the Honduran appellate proceeding at issue.

### 4.  Petitioner's request is unduly intrusive and burdensome.

For the reasons stated above, this Court also concludes that Petitioner's request is "unduly intrusive or burdensome" and would similarly "reject[]" Petitioner's request based on this discretionary factor.[9]  Intel, 542 U.S. at 265.

### IV.   Conclusion

For the reasons stated above:

1.  It is hereby ORDERED that this case be placed under SEAL for a period of sixty (60) days;

2.  I respectfully recommend that Petitioner's Application (ECF No. 1) be DENIED;

3.  I direct the Clerk to mail a copy of this Report and Recommendation to Petitioner's Counsel at the address listed on the docket;

4.  I also direct the Clerk to mail a copy of this Report and Recommendation to Respondent Michael McNicholas.

---

[9] This Court notes the discussion among scholars, commentators, and practitioners regarding the need to ensure that the powerful tool of § 1782 discovery is used fairly and properly.  See generally Melissa Stear Gorsline & Maria Pradilla Picas, U.S. Discovery in Aid of Investor-State Arbitrations: A Blessing or a Curse?, 30 Md. J. Int'l L. 14, 28 (2015) (noting that even where the statutory prerequisites are present, courts have often limited discovery under § 1782 to ensure fairness).

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Date:   10/1/15                                         /s/
                                    Beth P. Gesner
                                    United States Magistrate Judge